IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **NORTH HILLS VILLAGE LLC**<br>1051 Brinton Road,<br>Pittsburgh, Pennsylvania 15221<br><br>Plaintiff.<br><br>v.<br><br>**LNR PARTNERS, LLC,**<br>1601 Washington Avenue, Suite 700<br>Miami Beach, Florida 33139<br><br>and<br><br>**WELLS FARGO BANK,**<br>**NATIONAL ASSOCIATION**<br>1901 Harrison Street, 2nd Floor,<br>Oakland, CA 94612<br><br>Defendants. | Case No: 2:20-cv-431<br><br>**VERIFIED COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION** |

Plaintiff North Hills Village LLC ("North Hills Village") operates the North Hills Village Mall in Allegheny County. The North Hills Village Mall is a first class retail shopping center that has been managed by the Gumberg family for decades and has served the citizens of Pittsburgh and Allegheny County for more than sixty years. North Hills Village brings this action against LNR Partners, LLC ("LNR") as Special Servicer and Wells Fargo Bank, National Association ("Wells Fargo") as Servicer and Agent (collectively, "Defendants") in order to prevent an unwarranted and punitive "cash sweep" by Defendants. Without a legitimate legal basis to do so, Defendants seek to deprive North Hills Village of funds necessary for the operation and continued vitality of the shopping center. Defendants' outrageous actions – in the midst of a global pandemic and financial crisis – jeopardize the ability of North Hills Village to operate as a going concern. In support of its Complaint, North Hills Village pleads as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff North Hills Village LLC is a Delaware limited liability company with its principal place of business at 1051 Brinton Road, Pittsburgh, Pennsylvania 15221. On behalf of its members, Plaintiff manages the North Hills Village mall in Ross Township, Allegheny County, Pennsylvania.

2. Defendant LNR Partners, LLC is a Florida Limited Liability Company with a principal place of business in Miami Beach, Florida.

3. Defendant Wells Fargo Bank National Association is federally chartered bank with a principal place of business in Sioux Falls, South Dakota.

4. This Court has diversity jurisdiction over this case under 28 U.S.C. §§ 1332 and 1348 because Plaintiff is a citizen of Delaware and Pennsylvania, Defendants are citizens of Florida and South Dakota, and the amount in controversy exceeds $75,000.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants are subject to personal jurisdiction in this district.

**BACKGROUND**

6. North Hills Village operates a highly successful retail mall located at 4801 McKnight Road, Pittsburgh, PA 15237. The North Hills Village mall is a fully performing first class retail shopping center that has served the citizens of Pittsburgh and Allegheny County since the 1950s and has been managed by the Gumberg family for decades. The mall is fully occupied by prominent local and national tenants, including: Target, Kohl's, Best Buy, Michaels, Burlington Coat Factory and others.

7. In 2016, North Hills Village entered into a Loan Agreement (the "Loan Agreement") with JPMorgan Chase Bank, National Association ("JPMorgan") pursuant to which

JPMorgan extended a term loan to North Hills Village (the "Loan"). The Loan Agreement is attached to this Complaint as Exhibit A.

8. Simultaneously, North Hills Village, JP Morgan, and Wells Fargo entered into a Cash Management Agreement (the "CMA"). The CMA is attached to this Complaint as Exhibit B.

9. JPMorgan had the right to freely assign its interests in the Loan and the CMA. Upon information and belief, JPMorgan has assigned its rights to service the Loan to Defendants and has assigned other rights in the Loan and CMA to Wilmington Trust, National Association, as trustee ("Wilmington").

10. Pursuant to the Loan Agreement and CMA, North Hills Village's tenants pay monthly rent into a "lock box" account managed by Wells Fargo. On the first day of each month, lock box funds are distributed to pay taxes, insurance, agent fees, debt service and reserves in order of priority as set forth in Section 3.4 of the CMA. After all of the required payments are distributed, the remaining funds in the lock box are distributed to North Hills Village (the "North Hills Village Funds").

11. Access and use of the North Hills Village Funds are essential for North Hills Village to operate and maintain the mall.

12. Since the Loan was established in November of 2016, and continuing to this day, JPMorgan, Wilmington, and Defendants have received all payments required under the Loan Agreement, and North Hills Village has received access and use of the North Hills Village Funds.

**Burlington Renews Its Lease**

13. In late November of 2019, Burlington Coat Factory ("Burlington") and North Hills Village discussed renewal of Burlington's lease in the mall and potential modified lease terms.

14. In or about December of 2019, North Hills Village provided notice to Wells Fargo that Burlington and North Hills Village were in negotiations for a lease renewal that would mutually benefit North Hills Village and Burlington.

15. Neither LNR nor Wells Fargo expressed any concerns to North Hills Village about these negotiations.

16. Shortly thereafter, North Hills Village and Burlington agreed in principle to terms for a five-year renewal of Burlington's Lease (the "Burlington Lease Renewal"). Under the Burlington Lease Renewal, North Hills Village agreed to provide Burlington with a modest rent reduction and Burlington agreed to remain a tenant in the North Hills Village mall past the Loan's December 1, 2021 maturity date despite a right to otherwise terminate the lease at any time upon one year's notice.

17. On February 3, 2020, North Hills Village submitted the Burlington Lease Renewal to Defendants for review and approval. Once again, Defendants did not raise any concerns or objections regarding the proposed Burlington Lease Renewal.

18. On February 11, 2020, LNR, as Special Servicer for the Loan, requested information regarding the Burlington Lease Renewal. LNR asked whether Burlington's square footage had changed (it had not), whether there were any tenant improvement costs associated with the renewal (there were not), and whether there were any lease commissions associated with the renewal (there were none). LNR also requested an administrative processing fee and an operating statement for Burlington. North Hills Village provided the information and processing

fee to LNR on February 14, 2020.  Like Wells Fargo, LNR did not express any concerns or objections regarding the proposed Burlington Lease Renewal.

### LNR Approves the Burlington Lease Renewal But Seeks to Deprive North Hills Village of The North Hills Village Funds In Violation Of the Loan Agreement

19. On March 10, 2020, LNR provided North Hills Village with its written approval of the Burlington Lease Renewal.

20. Yet, despite approving the Burlington Lease Renewal, LNR nevertheless asserted that a "Burlington Trigger Event" had occurred under the Loan Agreement and that LNR immediately intended to invoke a "Cash Sweep Event."  A Cash Sweep is an extraordinary and punitive Loan provision that prevents North Hills Village from receiving the North Hills Village Funds actually necessary to operate and maintain the property.  Instead, during the "Cash Sweep Period," those funds are swept from the North Hills Village account maintained at Wells Fargo and directed into accounts controlled by Defendants.

21. The Loan Agreement provides that a Burlington Trigger Event (failure of Burlington to renew its lease) can trigger a Cash Sweep Event.  *See* Loan Agreement at Definitions.  However, the Loan Agreement also provides North Hills Village with the right to end the Cash Sweep Period by providing a "Tenant Trigger Event Cure."  *Id.*

22. In the case of a Burlington Trigger Event, North Hills Village may cure in two ways: by securing a replacement tenant for Burlington or, as relevant here, by obtaining a Burlington Lease Renewal.

23. Because Burlington had renewed its lease as approved by Defendants, North Hills Village disputed that a Burlington Trigger Event had occurred.  Furthermore, and in any event, North Hills Village had implemented a Tenant Trigger Event Cure through Burlington's lease renewal.  North Hills Village requested LNR's written assurance that it would not implement a

5

Cash Sweep on April 1, 2020, the first payment date when LNR's threatened Cash Sweep would come into effect.  LNR rejected this request.

24. Thus, LNR has placed North Hills Village in an impossible situation.  It (and Wells Fargo) have approved the Burlington Lease Renewal while simultaneously taking the position that the Burlington Lease Renewal does not qualify as a Tenant Trigger Event Cure.

25. LNR's position is both nonsensical and patently unreasonable.  LNR cannot approve the Burlington Lease Renewal and claim that the renewal it approved does not qualify as a cure for Burlington's failure to renew.

26. Under LNR's interpretation of the Loan Agreement, North Hills Village has no way to cure the Cash Sweep during the remaining term of the Loan Agreement.  North Hills Village cannot put a replacement tenant in the Burlington space because Burlington has renewed. And North Hills Village cannot negotiate a new lease with Burlington (nor would it know what, if any, terms it could change to appease LNR) because LNR has approved the Burlington Lease Renewal.

**LNR and Wells Fargo Refuse to Distribute Excess Reserves
to North Hills Village In Violation of the CMA**

27. Despite LNR's unsupported position in violation of the Loan Agreement, North Hills Village engaged in good faith efforts to reach a compromise with LNR to avoid a Cash Sweep.

28. During a telephone call on March 25, 2020, LNR told North Hills Village that it would consider halting a Cash Sweep if North Hills Village could provide an "equitable alternative" that would offer Defendants additional security for the Loan.  LNR admitted to North Hills Village that it was not implementing a Cash Sweep because of its concerns about

North Hills Village's performance under the Loan Agreement, but because of potential risks to LNR upon maturity of the Loan Agreement.

29. Accordingly, in order to obtain funds to pledge as additional security for the Loan, on March 26, 2020, North Hills Village requested distribution of $1.5 Million from North Hills Village's account maintained at Wells Fargo constituting excess funds held in a Rollover Reserve Account established by the CMA and the Loan Agreement.

30. As of March 26, 2020, the Rollover Reserve Account had a balance of over $2.6 Million. This amount far exceeds the $1 million minimum balance required by the Loan Agreement and any amounts reasonably expected to be needed for tenant improvements and leasing commissions for the balance of the term of the Loan Agreement. North Hills Village informed LNR and Wells Fargo that it was requesting distribution of these funds for the express purpose of providing additional security as requested by LNR on March 25, 2020.

31. Pursuant to Section 4.2 of the CMA, North Hills Village was entitled to a distribution of this excess amount and Wells Fargo and LNR had a mandatory obligation to distribute this amount to North Hills Village.

32. Wells Fargo and LNR failed to distribute these excess Rollover Reserve Account funds as required by the CMA.

**An Unlawful Cash Sweep During This Unprecedented Health And Financial Crisis Will Irreparably Harm North Hills Village**

33. As everyone is now painfully aware, the world is in the midst of an unprecedented global pandemic and resulting financial crisis.

34. Like many other businesses throughout the United States, North Hills Village is experiencing extreme economic challenges due to the measures that have been enacted to fight this global pandemic.

7

35. On March 19, 2020, non-essential businesses throughout Pennsylvania were ordered to shut down and on March 23, 2020, all residents in several counties including Allegheny County were ordered to stay at home except for certain essential activities.

36. Because of these developments and the related economic impacts, including strained credit markets, cash flow is more critical now than ever to the operation and management of the North Hills Village Mall.

37. LNR has no valid grounds under the Loan Agreement or the CMA to prevent North Hills Village from receiving North Hills Village Funds. North Hills Village has never missed any payment due under the Loan Agreement and the obligations of North Hills Village under the Loan Agreement are fully secured by real property as well as other accounts established under the CMA with balances exceeding $2.6 Million.

38. Yet, in the midst of this global and financial crisis, LNR is seeking a cash grab by taking a patently unreasonable position under the Loan Agreement in order to divert cash payments away from North Hills Village for the benefit of LNR and Wells Fargo.

39. If a Cash Sweep is implemented and North Hills Village is deprived of all further distributions of the North Hills Village Funds until the end of the Loan Agreement, the North Hills Village Mall itself is in jeopardy of failing and North Hills Village will be forced into default under the Loan Agreement due solely to the draconian and punitive actions by LNR and Wells Fargo.

40. The Cash Sweep, and the resulting fallout, will not only irreparably harm North Hills Village, but it will jeopardize the North Hills Village mall's operations and North Hills Village's tenants, including tenants that operate essential businesses under Pennsylvania's Emergency Order.

## CAUSES OF ACTION

### Count I – Breach of Loan Agreement

41. North Hills Village incorporates the allegations set forth in the foregoing paragraphs as if fully restated herein.

42. Under the Loan Agreement, a Cash Sweep is permitted only if a Tenant Trigger Event has occurred **and** North Hills Village has been unable to effect a Tenant Trigger Event Cure.

43. The signing of the Burlington Lease Renewal, and the approval of that lease by LNR and Wells Fargo, is a Tenant Trigger Event Cure that ends any purported Cash Sweep Period under the Loan Agreement.

44. Despite leasing to the same tenant under virtually identical lease terms approved by LNR, LNR has refused to acknowledge North Hills Village's cure and intends to implement a Cash Sweep on April 1, 2020.

45. LNR's failure to acknowledge North Hills Village's cure is a breach of the Loan Agreement.

46. Unless enjoined by this Court, Defendants' planned Cash Sweep will result in irreparable harm to North Hills Village.

47. North Hills Village is entitled to a temporary restraining order prohibiting Defendants from implementing a Cash Sweep because North Hills Village and its tenants will suffer imminent and irreparable harm beginning April 1, 2020 if the threatened Cash Sweep goes into effect.

48. North Hills Village is entitled to a preliminary injunction enjoining Defendants from implementing a Cash Sweep because North Hills Village and its tenants will suffer irreparable harm if the threatened Cash Sweep goes into effect.

49. North Hills Village is entitled to a permanent injunction enjoining Defendants from implementing a Cash Sweep because North Hills Village and its tenants will suffer irreparable harm if the threatened Cash Sweep goes into effect.

### Count II – Breach of the CMA

50. North Hills Village incorporates the allegations set forth in the foregoing paragraphs as if fully restated herein.

51. Under the CMA, North Hills Village is entitled to a distribution of any excess funds in the Rollover Reserve Account.

52. As of this filing, there are more than $1.5 Million in excess funds in the Rollover Reserve Account and, in accordance with Section 4.2 of the CMA, North Hills Village has requested distribution of these funds.

53. Wells Fargo has refused to distribute the excess Rollover Reserve Account funds as requested.

54. Wells Fargo's refusal to distribute the excess Rollover Reserve Account funds to North Hills Village is a breach of the CMA.

55. Wells Fargo's breach of the CMA will result in irreparable harm to North Hills Village.

56. North Hills Village is entitled to an injunction requiring Wells Fargo to disburse the excess Rollover Reserve Account funds to North Hills Village under the CMA.

### Count III – Declaratory Judgment

57. North Hills Village incorporates the allegations set forth in the foregoing paragraphs as if fully restated herein.

58.     An actual controversy exists as to whether a Cash Sweep Period is in effect under the Loan Agreement because LNR has indicated its intention to implement a Cash Sweep on April 1, 2020.  Despite requests, LNR has not retracted this intention.

59.     An actual controversy exists as to whether Wells Fargo is required to distribute excess Rollover Reserve Account funds to North Hills Village under the CMA because North Hills Village has asked for the disbursement of those funds and Wells Fargo has refused.

60.     North Hills Village is entitled to a declaratory judgment that no Cash Sweep Period is in effect and LNR may not implement a Cash Sweep.

61.     North Hills Village is entitled to a declaratory judgment that Wells Fargo is required to distribute the excess Rollover Reserve Account funds to North Hills Village under the CMA.

## PRAYER FOR RELIEF

WHEREFORE, North Hills Village prays for relief and judgment as follows:

A.      Declaratory judgment in favor of North Hills Village and against Defendants that a Tenant Trigger Event Cure has occurred and therefore no Cash Sweep Period currently exists under the Loan Agreement and Cash Management Agreement.

B.      Declaratory judgment in favor of North Hills Village and against Defendants that Wells Fargo is required to disburse $1.5 million of excess funds in the Rollover Reserve Account to North Hills Village.

C.      That a temporary restraining order be issued prohibiting Defendants, and all of their agents and other persons or entities acting on their behalf, from implementing a Cash Sweep Period under the Loan Agreement and Cash Management Agreement.

D. That a preliminary injunction be issued enjoining Defendants, and all of their agents and other persons or entities acting on their behalf, from implementing a Cash Sweep Period under the Loan Agreement and Cash Management Agreement.

E. That a permanent injunction be issued enjoining Defendants, and all of their agents and other persons or entities acting on their behalf, from implementing a Cash Sweep Period under the Loan Agreement and Cash Management Agreement.

F. That a permanent injunction be issued requiring Wells Fargo to distribute the excess Rollover Reserve Funds discussed in Count II to North Hills Village under the CMA.

G. An award of attorneys' fees, costs, and expenses; and

H. Such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, North Hills Village demands a trial by jury on all issues so triable.

Date: March 30, 2020

*/s/ Mark C. Zheng*
Mark C. Zheng (Pa. Bar 313510)
Daren S. Garcia (Pa. Bar 318099)
Vorys, Sater, Seymour and Pease LLP
500 Grant Street, Suite 4900
Pittsburgh, PA 15219-2502
Phone: (412) 904-7722
Fax: (412) 904-7804
Email: mczheng@vorys.com
          dsgarcia@vorys.com


and

Joseph R. Miller
(*pro hac vice* application forthcoming)
John M. Kuhl
(*pro hac vice* application forthcoming)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-6350
Email: jrmiller@vorys.com
       jmkuhl@vorys.com

*Attorneys for Plaintiff North Hills Village LLC*

## VERIFICATION

I, Stephen P. Petrosky, am the Secretary and Treasurer for North Hills Village LLC. I hereby verify that I have personal knowledge of the facts set forth in the foregoing Verified Complaint and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa. C. S. § 4904 relating to unsworn falsification to authorities.

_____
Stephen P. Petrosky, Secretary and Treasurer