IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **NORTH HILLS VILLAGE LLC** | Case No: 2:20-cv-00431 |
| Plaintiff, | Chief Judge Hornak |
| v. | **PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| **LNR PARTNERS, LLC,** and **WELLS FARGO BANK, N.A.** | |
| Defendants. | |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff North Hills Village LLC ("North Hills Village") submits the following proposed findings of fact and conclusions of law in support of its Motion for Preliminary Injunction and in opposition to Defendants' Motion to Dismiss.

**FINDINGS OF FACT**

1.  North Hills Village is a Delaware limited liability company with its principal place of business at 1051 Brinton Road, Pittsburgh, Pennsylvania 15221.

2.  North Hills Village's sole member is the North Hills Village Shopping Center Trust ("NHV Trust").

3.  NHV Trust is not registered as a business trust under Pennsylvania law and, based upon the record before the Court, does not function as a business trust.

4.  NHV Trust is a traditional trust.

5.  The sole trustee for NHV Trust is Ira Gumberg, a citizen of Pennsylvania.

6.  North Hills Village, on behalf of NHV Trust, operates the North Hills Village Mall in Ross Township, Allegheny County, Pennsylvania.

7. Defendant LNR Partners, LLC ("LNR") is a Florida limited liability company with a principal place of business in Miami Beach, Florida.

8. LNR is ultimately solely owned by Starwood Property Trust, Inc., a Maryland corporation whose principal place of business is in Connecticut.

9. Defendant Wells Fargo Bank, National Association ("Wells Fargo") is a federally chartered bank with a principal place of business in Sioux Falls, South Dakota.

10. North Hills Village operates a retail mall located at 4801 McKnight Road, Pittsburgh, PA 15237 ("North Hills Village Mall").

11. The North Hills Village Mall is occupied by restaurant and retail tenants, including Target, Kohl's, Best Buy, Michaels, Burlington Coat Factory, and others.

12. In 2016, North Hills Village entered into a Loan Agreement (the "Loan Agreement") with JPMorgan Chase Bank, National Association ("JPMorgan") pursuant to which JPMorgan extended a term loan to North Hills Village (the "Loan").

13. Simultaneously, North Hills Village, JPMorgan, and Wells Fargo entered into a Cash Management Agreement (the "CMA"), which governs how certain funds related to the Loan are to be handled.

14. JPMorgan had the right to freely assign its rights in the Loan and the CMA.

15. JPMorgan has assigned its rights and obligations in the Loan and the CMA relevant to servicing the Loan to Defendants LNR and Wells Fargo.

16. JPMorgan has assigned other rights and obligations under the Loan to Wilmington Trust, National Association ("Wilmington"), which was not directly involved in the contractual breaches alleged in this case.

17. Pursuant to the Loan Agreement and CMA, North Hills Village's tenants pay monthly rent into a "lock box" account managed by Wells Fargo.

18. On the first day of each month, lock box funds are distributed to pay taxes, insurance, agent fees, debt service, and reserves in order of priority as set forth in Section 3.4 of the CMA.

19. After all of the required payments are distributed, the remaining funds in the lock box are distributed to North Hills Village ("North Hills Village Funds").

20. Access to and use of the North Hills Village Funds are essential for North Hills Village to operate and maintain the North Hills Village Mall.

21. Since the Loan was established in November of 2016, and continuing to this day, JPMorgan, Wilmington, and Defendants have received all payments required under the Loan Agreement, and North Hills Village has received access to and use of the North Hills Village Funds.

22. One of the tenants at the North Hills Village Mall is Burlington Coat Factory ("Burlington").

23. In late November of 2019, Burlington and North Hills Village discussed renewal of Burlington's lease in the North Hills Village Mall and potential modified lease terms.

24. In or about December of 2019, North Hills Village provided notice to Wells Fargo that Burlington and North Hills Village were in negotiations for a lease renewal that would mutually benefit North Hills Village and Burlington.

25. Neither LNR nor Wells Fargo expressed any concerns to North Hills Village about these negotiations.

26. Shortly thereafter, North Hills Village and Burlington agreed in principle to terms for a five-year renewal of Burlington's Lease (the "Burlington Lease Renewal").

27. Under the Burlington Lease Renewal, North Hills Village agreed to provide Burlington with a modest rent reduction and Burlington agreed to remain a tenant in the North Hills Village Mall past the Loan's December 1, 2021 maturity date despite a right to otherwise terminate the lease at any time upon one year's notice.

28. On February 3, 2020, North Hills Village submitted the Burlington Lease Renewal to LNR and Wells Fargo for their review and approval. LNR and Wells Fargo did not raise any concerns or objections regarding the proposed Burlington Lease Renewal.

29. On February 11, 2020, LNR, as Special Servicer for the Loan, requested information regarding the Burlington Lease Renewal. LNR asked whether Burlington's square footage had changed, whether there were any tenant improvement costs associated with the renewal, and whether there were any lease commissions associated with the renewal. The answers to all of these three questions were no. LNR also requested an administrative processing fee and an operating statement for Burlington.

30. North Hills Village provided the requested information and processing fee to LNR on February 14, 2020. After receiving this information, LNR did not express any concerns or objections regarding the proposed Burlington Lease Renewal.

31. On March 10, 2020, LNR provided North Hills Village with its written approval of the Burlington Lease Renewal.

32. Nevertheless, LNR also asserted that a "Burlington Trigger Event" had occurred under the Loan Agreement and that LNR immediately intended to invoke a "Cash Sweep Event."

33. A "Cash Sweep Event" triggers a "Cash Sweep Period" under the Loan Agreement and the CMA. During a "Cash Sweep Period," the North Hills Village Funds that would otherwise be disbursed to North Hills Village are swept from the North Hills Village account maintained at Wells Fargo and directed into accounts controlled by LNR and Wells Fargo.

34. The Loan Agreement provides that a Burlington Trigger Event (failure of Burlington to renew its lease) can trigger a Cash Sweep Event.

35. However, the Loan Agreement also provides North Hills Village with the right to end the Cash Sweep Period by providing a "Tenant Trigger Event Cure."

36. In the case of a Burlington Trigger Event, North Hills Village may cure in two ways: by securing a replacement tenant for Burlington or by obtaining a Burlington Lease Renewal.

37. Because North Hills Village obtained the Burlington Lease Renewal, it believed that the Cash Sweep Period was improper and requested LNR's written assurance that it would not implement a Cash Sweep on April 1, 2020, the first payment date when LNR's threatened Cash Sweep would come into effect.

38. LNR rejected this request.

39. Instead, during a telephone call on March 25, 2020, LNR told North Hills Village that it would consider halting the Cash Sweep if North Hills Village could provide an "equitable alternative" that would offer Defendants additional security for the Loan.

40. LNR admitted to North Hills Village that it was not implementing a Cash Sweep because of its concerns about North Hills Village's performance under the Loan Agreement, but because of potential risks to LNR upon maturity of the Loan Agreement.

41. On March 26, 2020, to obtain funds to pledge as additional security for the Loan, North Hills Village requested distribution of $1.5 Million from North Hills Village's account maintained at Wells Fargo constituting excess funds held in a Rollover Reserve Account established by the CMA and the Loan Agreement.

42. As of March 26, 2020, the Rollover Reserve Account had a balance of over $2.6 Million.

43. However, under the Loan Agreement, the Rollover Reserve Account needs only a minimum balance of $1 million plus any amounts reasonably expected to be needed for tenant improvements and leasing commissions for the balance of the term of the Loan Agreement.

44. Accordingly, the Rollover Reserve Account contained over $1.5 million in excess funds as of March 26, 2020.

45. North Hills Village requested that these excess funds be disbursed to it under Section 4.2 of the CMA, which required Wells Fargo to make that disbursement.

46. Wells Fargo and LNR did not distribute these excess funds in the Rollover Reserve Account to North Hills Village.

47. On March 30, 2020, North Hills Village filed this action, seeking a temporary restraining order, preliminary and permanent injunctions, and declaratory judgment against LNR and Wells Fargo, prohibiting LNR and Wells Fargo from implementing a Cash Sweep and requiring them to disburse the excess funds in the Rollover Reserve Account.

48. On March 31, 2020, all parties agreed to a standstill agreement for a period of 40 days pursuant to which LNR and Wells Fargo would not implement a Cash Sweep Period. The standstill agreement was extended by all parties through June 1, 2020, but is set to expire thereafter.

49. Accordingly, without further Order of this Court, LNR and Wells Fargo intend to implement a Cash Sweep Period after June 1, 2020.

50. LNR and Wells Fargo also still have not disbursed the excess funds in the Rollover Reserve Account.

51. Like many other businesses throughout the United States, North Hills Village is experiencing extreme economic challenges due to the COVID-19 pandemic and the measures that have been enacted to fight it.

52. For example, on March 19, 2020, non-essential businesses throughout Pennsylvania were ordered to shut down and, on March 23, 2020, all residents in several counties, including Allegheny County, were ordered to stay at home except for certain essential activities.

53. While these restrictions have since been partially eased, business conditions have not yet returned to normal.

54. Because of these developments and the related economic impacts, including strained credit markets, cash flow is more critical now than ever to the operation and management of the North Hills Village Mall.

55. Defendants' Cash Sweep threatens to deprive North Hills Village of critical cash flow during this time.

56. Likewise, North Hills Village seeks access to $1.5 million in excess funds in the Rollover Reserve Account in order to cover any shortfalls that may occur during these turbulent times so as to not default under the Loan Agreement and that consequences that may follow.

57. Without that cash flow, North Hills Village is at risk of default under the Loan Agreement, which could cause the North Hills Village Mall to fail and North Hills Village to lose control over the North Hills Village Mall or parts thereof.

58. A default by North Hills Village or a failure of the North Hills Village Mall would adversely affect both North Hills Village, as well as the tenants at the North Hills Village Mall.

## CONCLUSIONS OF LAW

59. The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

60. Plaintiff North Hills Village LLC is a citizen of Pennsylvania.

61. Plaintiff North Hills Village LLC's sole member is North Hills Village Trust, which is a traditional trust whose citizenship is that of its trustee, Ira Gumberg – namely, Pennsylvania.

62. Defendant LNR Partners LLC is a citizen of Maryland and Connecticut.

63. Defendant Wells Fargo Bank, N.A. is a citizen of South Dakota.

64. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants are subject to personal jurisdiction in this district.

65. North Hills Village has met the requirements for obtaining a preliminary injunction.

66. North Hills Village has shown a likelihood of success on the merits of its claims.

67. Defendants have been properly assigned the relevant servicing rights under the Loan Agreement and CMA relating to the Cash Sweep and distribution of excess funds in the

Rollover Reserve Account and, accordingly, North Hills Village may assert a breach of contract claim against them for breaching the Loan Agreement and CMA while exercising those rights.

68. Defendants' threatened Cash Sweep would likely breach the Loan Agreement and CMA between the parties. Under the Loan Agreement, a Cash Sweep is permitted only if a Tenant Trigger Event has occurred and North Hills Village has been unable to effect a Tenant Trigger Event Cure. The signing of the Burlington Lease Renewal, and the approval of that lease by LNR and Wells Fargo, is a Tenant Trigger Event Cure that ends any purported Cash Sweep Period under the Loan Agreement.

69. In addition, while Defendants contend that the Burlington Renewal Criteria of the Loan Agreement required renewal under the identical conditions as the Burlington Lease, the Loan Agreement does not require that. The Burlington Renewal Criteria simply require renewal "in accordance with" the terms and conditions set forth in the Burlington Lease, among other criteria.

70. Further, Defendants' refusal to distribute the excess funds in the Rollover Reserve Account likely breaches the CMA. Under the CMA, North Hills Village is entitled to a distribution of the over $1.5 million excess funds in the Rollover Reserve Account.

71. North Hills Village also faces a probability of irreparable harm if relief is not granted because Defendants' threatened Cash Sweep and refusal to disburse the excess funds in the Rollover Reserve Account could deprive North Hills Village of the liquidity it needs to survive the current public health and economic crisis and put North Hills Village at a risk of default on the Loan, which could allow Defendants to impair or take over all or part of the North Hills Village Mall.

72. The North Hills Village Mall is a unique and strategically located piece of real property, the loss or impairment of which would constitute irreparable harm.

73. An injunction would not do any greater harm to Defendants, because the Burlington Lease Renewal does not increase any risk to Defendants, and Defendants have adequate security on the Loan in any event.

74. An injunction is in the public interest because it ensures the smooth and continued functioning of the North Hills Village Mall during this economic crisis.

75. Accordingly, Defendants' Motion to Dismiss is denied.

76. Furthermore, Plaintiff's Motion for Preliminary Injunction is granted.

77. Defendants are enjoined from implementing a Cash Sweep against North Hills Village.

78. Defendants are also hereby ordered to distribute $1.5 million in excess funds in the Rollover Reserve Account to North Hills Village.

Date: May 29, 2020                                     */s/ Mark C. Zheng*
                                                                          Mark C. Zheng (Pa. Bar 313510)
                                                                          Daren S. Garcia (Pa. Bar 318099)
                                                                          Vorys, Sater, Seymour and Pease LLP
                                                                          500 Grant Street, Suite 4900
                                                                          Pittsburgh, PA 15219-2502
                                                                          Phone: (412) 904-7722
                                                                          Fax: (412) 904-7804
                                                                          Email: mczheng@vorys.com
                                                                                     dsgarcia@vorys.com

                                                                          and

                                                                          Joseph R. Miller
                                                                          John M. Kuhl
                                                                          Vorys, Sater, Seymour and Pease LLP
                                                                          52 E. Gay Street
                                                                          P.O. Box 1008
                                                                          Columbus, OH 43216-1008
                                                                          Phone: (614) 464-6400
                                                                          Fax: (614) 719-6350
                                                                          Email: jrmiller@vorys.com
                                                                                     jmkuhl@vorys.com

                                                                          *Attorneys for Plaintiff North Hills Village LLC*

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2020, a copy of the foregoing was served on all counsel of record via the court's CM/ECF system.

/s/ Mark C. Zheng
Mark C. Zheng
