IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH HILLS VILLAGE LLC, | ) |
| Plaintiff, | ) |
| v. | ) 2:20-cv-00431 |
| LNR PARTNERS, LLC, et al., | ) |
| Defendants. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

This matter primarily encompasses state law breach of contract claims, which the Plaintiff asserts by invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, with reference to § 1348. Now before the Court is the Defendants' Motion to Dismiss brought for both lack of subject matter jurisdiction and for failure to state a claim under Civil Procedure Rules 12(b)(1) and 12(b)(6). (ECF No. 34.) For the reasons set out in this Opinion, the Court will grant the Defendants' Motion and dismiss this action without prejudice because the Plaintiff cannot satisfy the requirements for diversity jurisdiction. Accordingly, the Court does not address whether the Plaintiff would have adequately stated a claim per Rule 12(b)(6).

I. **BACKGROUND**

The Plaintiff, North Hills Village LLC ("NHV"), operates a shopping mall in Allegheny County, Pennsylvania that has been in business for more than sixty (60) years providing retail space for local and national tenants, to include Burlington Coat Factory. (ECF No. 32, at 1–2.) NHV entered into a Loan Agreement ("Loan") and Cash Management Agreement ("CMA") in 2016 with Defendant Wells Fargo Bank, N.A. ("WFB") and JPMorgan Chase Bank, N.A. ("JPMC"), the latter of which is not a party here. (*Id.* at 3.) NHV alleges that JPMC assigned its

1

rights to service the Loan to WFB and LNR Partners, LLC ("LNR") (collectively "the Defendants"). (*Id.*) Other rights that JPMC had in the Loan and CMA were assigned to yet another entity, Wilmington Trust, N.A., which is also not a party here. (*Id.*)

An issue arose in early 2020 after the Plaintiff renewed a lease with one of its tenants, Burlington Coat Factory. (*Id.* at 5.) That set in motion a series of events concerning whether a "Cash Sweep Event" had been triggered under the terms of the Loan by Burlington Coat Factory's lease renewal. (*Id.*) Whether that Cash Sweep Event was in fact triggered and whether the Plaintiff had "cured" it were central to the underlying dispute, which resulted in the Plaintiff filing its Complaint along with a Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF Nos. 1, 6.)

Since this action was filed, the parties reached two (2) separate standstill agreements and attended a mediation that failed to resolve the case. The Court nearly held a hearing on the requests for equitable relief on two separate occasions, which were both cancelled at the eleventh hour due to the consummation of the standstill agreements. (ECF Nos. 7, 20, 27, 41). Finally, the parties reached an indefinite standstill agreement to engage in discovery and allow the Court to resolve the pending Motion to Dismiss, as well as prepare for a full-blown hearing, which the parties requested take place in August 2020 if it were necessary. (ECF No. 63.)

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue . . . is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ). By contrast, a Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's

claim. In other words . . . the question is whether the plaintiff would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The party asserting jurisdiction (here, the Plaintiff) bears the burden of proving its claims are properly before the Court. *Dev't Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a Rule 12(b)(1) motion, the Court must determine whether the attack on its jurisdiction is facial or factual. *Petruska*, 462 F.3d at 302 n.3. A facial attack challenges the Court's jurisdiction without disputing the averred facts in the complaint, and requires the Court to treat those averments as true. *Id.* A factual attack, however, contests the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or presenting competing facts. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When a factual challenge is made, the plaintiff's factual allegations receive no presumption of truthfulness. *Mortensen*, 549 F.2d at 891. "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In contrast to a 12(b)(6) motion, a Court considering a 12(b)(1) motion may review facts outside the complaint because a federal court must assure itself of its jurisdiction to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (3d Cir. 1991).

Here, because the Defendants have challenged whether the Plaintiff, as a factual matter, is a traditional trust or a business trust for the purposes of determining the Plaintiff's citizenship, the Court will consider their motion as a factual attack on subject matter jurisdiction. The Court may therefore "inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). Here, the Court has considered the exhibits of the Plaintiff's trust documents in order to determine the citizenship of the Plaintiff, without holding to an evidentiary hearing,

3

after giving the parties two opportunities to seek a hearing if further facts needed to be developed before the Court ruled on the Motion to Dismiss. (ECF Nos. 80, 82.) In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d at 891).

### III. DISCUSSION

It is fundamental that the Court must be satisfied that it has subject matter jurisdiction before it can reach the merits of any case. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). Here, the Plaintiff has invoked the Court's diversity jurisdiction, which broadly speaking requires that all plaintiffs be diverse from all defendants and an amount in controversy exceeding $75,000. *Id.*; 28 U.S.C. § 1332(a).[1] While diversity rests on the state citizenship of the parties, and the citizenship of a natural person is wherever that person is domiciled, an LLC such as the Plaintiff is deemed a citizen of every state of which any of its members is a citizen. *GBForefront*, 888 F.3d at 34.

In its Amended Complaint, NHV pleads that its sole member is the North Hills Village Shopping Center Trust ("NHV Trust"). (ECF No. 32, at 1–2.) The Defendants do not disagree and the Court has no basis to conclude otherwise. Therefore, the citizenship of the Plaintiff for the purposes of diversity jurisdiction is that of NHV Trust. In determining the citizenship status of NHV Trust, the Court is guided by several principles that apply when trusts are involved in a lawsuit. First, "when a trustee sues or is sued on behalf of a trust, the citizenship of the trust is based on that of the trustee alone." *GBForefront*, 888 F.3d at 37 (citing *Navarro Savings*

---

[1] The Complaint's reference to 28 U.S.C. § 1348 does not generate an independent basis for the Court's exercise of subject matter jurisdiction, but appears to be referenced only as to its provisions relative to the citizenship of a "national banking association," *e.g.* the status of one of the Defendants here. For the reasons set out in this Opinion, the jurisdictional problem here relates to the citizenship status of the Plaintiff.

*Association v. Lee*, 446 U.S. 458, 465–66 (1980)). Here, the trustee of NHV Trust is not suing in his own name. So, this principle does not apply of its own force, but does become relevant to the Plaintiff's argument, as discussed below. Second, a *traditional* trust's citizenship is based solely on the citizenship of the trustee. *Id.* at 39. And third, a *business* trust's citizenship is determined by the citizenship of *all* of its members. *Id.* at 37. The inquiry here turns on whether NHV Trust is a business trust or a traditional trust, and thus whether its citizenship (and by extension the citizenship of Plaintiff NHV) is determined by that of its trustee or of all of its members.

The Plaintiff's Amended Complaint alleged that the Defendants' citizenships for diversity purposes are in Maryland, Connecticut, and South Dakota. (ECF No. 34, ¶¶ 5–6.) It then alleges that NHV's citizenship is that of the trustee for NHV Trust, Ira Gumberg, an individual who is domiciled in Pennsylvania. (*Id.* ¶ 1.) Therefore, all parties would be diverse if NHV Trust is a traditional trust whose citizenship is tied solely to Mr. Gumberg as trustee. However, the Plaintiff went on to plead that *none* of the beneficiaries of NHV Trust are citizens of Maryland, Connecticut, or South Dakota. (*Id.* ¶ 3.) That is, the Plaintiff hedged its bets in its Amended Complaint. Effectively, the Amended Complaint spells out that, for diversity purposes, it does not matter whether NHV Trust is a business or traditional trust. Diversity jurisdiction would be satisfied either way from the Plaintiff's perspective.

But some of that turned out to not be exactly the case. Upon further investigation, the Plaintiff advised the Court (appropriately so) in a telephonic status conference with all counsel that one of the beneficiaries of NHV Trust is a "general common law family partnership." (ECF No. 56, at 6:15–17.) A partnership assumes the citizenship of all of its partners, *GBForefront*, 888 F.3d at 34, and in this case one of the partners is a United States citizen permanently living abroad in British Columbia, Canada. (ECF No. 56, at 6:17–18.) So, in sum, if NHV Trust is a business trust,

then its citizenship is that of all of its members. One of its members is a partnership, which assumes the citizenship of all of its partners. One of those partners is an American citizen domiciled abroad. So, if NHV Trust is a business trust, one constituent part of NHV's citizenship as relevant for these purposes would be a so-called "stateless" party. And that status would be fatal to diversity jurisdiction.[2]

The Third Circuit has held that "[a]n American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such a person is 'stateless' for purposes of diversity jurisdiction. Thus, *American citizens living abroad cannot be sued (or sue) in federal court based on diversity jurisdiction* as they are neither 'citizens of a State' nor 'citizens or subjects of a foreign state.'" *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 184 (3d Cir. 2008) (emphasis added) (citations omitted) (citing 28 U.S.C. § 1332(a)). To put a finer point on it, the Plaintiff will satisfy diversity jurisdiction if it is a traditional trust with citizenship being determined solely by the citizenship of its Pennsylvania-domiciled trustee. But if it is a business trust, NHV cannot assert diversity jurisdiction in any federal court for any cause of action because a stateless citizen cannot sue or be sued in any federal court in the United States. So, the question presented turns to whether NHV Trust is traditional or business trust.

The Third Circuit in *GBForefront* has laid out the analysis for determining whether a trust is traditional or for business purposes in the context of diversity jurisdiction citizenship. At a high level, a traditional trust exists as a fiduciary relationship and not as a distinct legal entity, whereas a business trust is an unincorporated business entity. *GBForefront*, 888 F.3d at 40. There are two

---

[2] This multi-layered analysis of citizenship may appear convoluted, but it is exactly the analysis that the law requires. *GBForefront*, 888 F.3d at 36 (citing *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n.16 (3d Cir. 2015)) ("When a business entity consists of constituent parts that are also business forms, the inquiry into jurisdictional citizenship 'can become quite complicated. . . . [T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be.'").

6

inquiries to make in this regard: (1) looking to the law of the state where the trust was formed to determine if it has the status of a juridical person (however, labels affixed by state law are not determinative) and (2) looking to the purposes of the trust. *Id.* On the "purposes" inquiry, "a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for exchange." *Id.* Additionally, the analysis is no different when, like here, the trust is contained within an LLC. *Id.* at 40 ("The rules for determining citizenship do not change depending on whether a trust is embedded within another business entity.").

The Plaintiff argues, and appears to be correct, that Pennsylvania does not characterize NHV Trust as a business trust. The Plaintiff points to Title 15 section 9501 of the Pennsylvania Code, which states that a trust is a business trust if the deed of trust is either: (1) filed with the Department of State; or (2) states that the trust exists subject to the provisions of Title 15, Chapter 95 "Business Trusts." 15 Pa. Cons. Stat. § 9501(a)(1). The Plaintiff avers that neither is the case here, and that appears to be accurate based upon a review of the deed of trust. (*See* Pl.'s Ex. 8, ECF No. 46-8.) Rather, the deed appears to have been recorded with the Department of Real Estate and the trust instrument contains no language referencing Title 15 of the Pennsylvania Code. Further, the statute exempts from the definition of a "business trust" any "trust for the benefit of one or more investors with respect to a lease of real or personal property, unless the instrument creating the trust is filed under this chapter." 15 Pa. Cons. Stat. § 9501(a)(2)(iv). The trust here appears to fall under that exception as it is for the benefit of several "investors" who are entitled to the proceeds from the "Trust Property," defined as the "Shopping Center known as the North Hills Village Shopping Center." (ECF No. 46-8, at 11, 26, 52.) Those proceeds naturally would include monies earned from the leasing of the Trust Property to tenants in the Shopping Center. Thus, Pennsylvania law appears to embrace trusts like NHV Trust under this exception. *See Milby*

*v. Pote,* 2018 PA Super 155, 189 A.3d 1065, 1078, *appeal denied,* 199 A.3d 340 (Pa. 2018) (stating that a trust fell under this exception where a trust's "sole business" is the leasing of property for the benefit of its investor).

However, as the Third Circuit instructs, labels affixed by state law are not determinative in the business trust inquiry.[3] *GBForefront*, 888 F.3d at 40 (citing *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) (noting that a trust entity's membership is not limited to only its trustees "just because the entity happens to call itself a trust")). Indeed, the law review article that the court favorably cited in *GBForefront* observed:

> Commentators sometimes seek to distinguish commercial and non-commercial trusts on the grounds that many commercial trusts are statutory in nature. However, that issue is not as important as it may initially appear, since many commercial trusts . . . are created by private agreements in the form of trust deeds or declarations of trust rather than by compliance with statutory or regulatory formalities. As a result, many of the key legal principles relating to commercial trusts are found in the common law rather than in statutes.

S.I. Strong, *Congress and Commercial Trusts: Dealing with Diversity Jurisdiction Post-Americold,* 69 Fla. L. Rev. 1021, 1036 (2017).

Turning to the "purposes of the trust" inquiry, the "primary point of distinction" is whether the trust implements a traditional fiduciary relationship or is a distinct legal entity. *GBForefront*, 888 F.3d at 40. Thus, the Court must look to the purposes of the trust to determine whether it either implements a bargained-for exchange, as in a business trust, or a donative transfer, as in a

---

[3] The Plaintiff cites *Strassman, Tr. of Robert H. Strassman Revocable Tr. v. Essential Images*, No. 18-CV-746, 2018 WL 5718286 (M.D. Pa. Nov. 1, 2018) as a case that properly applied the *GBForefront*. However, *Strassman* only analyzed the law of the state where the trust at issue was created and did not apply the second inquiry as to considering the purposes of the trust. *Id.* at *4. For this reason, the Court does not find that *Strassman* is a persuasive guide in applying *GBForefront*.

traditional trust. *Id.* The *GBForefront* Court also stated that the Second Restatement of Trusts can be informative in this inquiry. *Id.* (citing Restatement (Second) of Trusts §§ 1 cmt. b, 2 (1959)).[4]

The Plaintiff argues that certain aspects of the NHV Trust demonstrate that its purpose is traditional, i.e. donative transfer. For instance, they argue that the powers of the NHV Trust are highly concentrated in the trustee, which they say is evidence that the trust is merely a fiduciary relationship between multiple people and is not a distinct legal entity. The Plaintiff cites *Bynane v. Bank of New York Mellon for CWMBS, Inc.*, 866 F.3d 351, 356–57 (5th Cir. 2017) and *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1229–30 (9th Cir. 2019) for the proposition that "if a trustee's 'control over the trust's assets is real and substantial,' then the trustee is the real party in interest and only the trustee's citizenship matters for diversity purposes." (ECF No. 44, at 4.) The Plaintiff then goes on to cite provisions of the trust instrument that demonstrate the NHV Trust trustee has "real and substantial control." (*Id.* at 4–5.)

However, the Plaintiff's argument here misses the mark. The Defendant in *Bynane* was sued in its capacity as a trustee. 866 F.3d at 357. Thus, the *Bynane* Court held that the Supreme Court's ruling in *Navarro Savings Association v. Lee* should apply, which held that "[w]here a trustee has been sued or files suit in her own name, the only preliminary question a court must answer is whether the party is an active trustee whose control over the assets held in its name is real and substantial." *Id.* (alterations and quotations omitted). The defendant in *Demarest* was also "the trustee of a traditional trust," and so the court cited *Bynane* in support of the same proposition. 920 F.3d at 1229, 1331. As stated previously, *Navarro* does not apply here because there is no trustee that has sued or been sued in its individual capacity and the Supreme Court has otherwise

---

[4] *GBForefront* observed that the Second Restatement of Trusts "describes traditional rather than business trusts" as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *GBForefront*, 888 F.3d at 40 n.13 (citing Restatement (Second) of Trusts § 2 (1959)).

held that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192–93 (1990).

Still, the Plaintiff proffers three other aspects of the NHV Trust which it says demonstrate that it is a traditional trust: (1) the procedures for trustee succession resemble a traditional donative trust; (2) the Trust Property is fixed and the trust exists to preserve that property; and (3) the trust contains restrictions on transfer that are akin to those of a traditional trust. (ECF No. 44, at 5–6.) The Defendants point to various other aspects of the NHV Trust to argue the other way. (ECF No. 35, at 9–10.)

Since *GBForefront* was decided, few courts in this Circuit have engaged with the business trust analysis laid out by the Third Circuit. One court found occasion to address whether a party was a "business trust" in the context of Chapter 11 relief eligibility and cited *GBForefront* in part in making its determination. *In re Dille Family Tr.*, 598 B.R. 179 (Bankr. W.D. Pa. 2019). *Dille Family Trust* discussed two overarching elements of a "business trust": (1) whether the trust was created for the purpose transacting a business for profit and (2) whether the trust has "indicia of corporateness." *Id.* at Those indicia include:

1. The trust implements a bargained-for exchange. *Id.* at 199 (citing *GBForefront*, 888 F.3d at 40).
2. The trust is formed by a group of investors who contribute capital to the enterprise with the expectation of receiving a return on their investment. *Id.* at 200 (citing *In re Secured Equip. Tr. of E. Air Lines, Inc.*, 38 F.3d 86, 90 (2d Cir. 1994); *In re Eagle Tr.*, No. 97-23298, 1998 WL 635845, at *5 (E.D. Pa. Sept. 16, 1998); *In re Joobeen*, 385 B.R. 599, 613 (E.D. Pa. 2008)).
3. The trust creates a continuity of the business enterprise uninterrupted by death among the beneficial owners. *Id.* (citing *Morrissey v. Comm'r of Internal Revenue*, 56 S. Ct. 289, 296–97 (1935); *In re Mosby*, 61 B.R. 636, 638 (E.D. Mo. 1985); *In re Parade Realty, Inc., Employees Ret. Pension Tr.*, 134 B.R. 7, 11 (Bankr. D. Haw. 1991)).
4. The trust permits the transfer of interests. *Id.*

These "indicia" are more granular indicators that animate the holding in *GBForefront*, which generally defines a "business trust" as a trust that exists as a "distinct legal entity" and "implements

a bargained-for exchange." 888 F.3d at 40. However, the "purpose" inquiry and "indicia of corporateness" discussed in *Dille Family Trust* are not inconsistent with the overarching definition set forth in *GBForefront*. That is, the "purpose of transacting a business for a profit" and "indicia of corporateness" factors in *Dille Family Trust* generally align with the "purposes" inquiry discussed in *GBForefront* that asks whether the trust implements a "bargained-for exchange."

Furthermore, the Court can discern other key factors distinguishing the two types of trusts from the law review article that the *GBForefront* Court favorably cited for the proposition that "a business trust implements a bargained-for exchange." *Id.* The additional indicia that the article discussed include:

1. Settlors in a traditional trust receive no compensation for the conveyance of the property into the trust, whereas the settlor in a business trust always receives payment for assets conveyed to the trust;
2. In traditional trusts, the settlor is seldom the sole or principal beneficiary;
3. In business trusts, the trust *res* consists of property originally contributed by the beneficiaries themselves;
4. Some business trusts vest title to the trust property in the trust as a legal entity, rather than in the trustees, as is the case with traditional trusts;
5. Business trusts typically refer to beneficiaries as "shareholders" or "members";
6. Members of a business trust can freely transfer their beneficial interests in the trust;
7. Members of a business trust can have the ability to elect, remove, or control the various trustees and amend the terms of the trust, which is ordinarily difficult or impossible in traditional trusts without the settlor's consent;
8. Settlors of a business trust almost always retain a residual interest in the trust *res* that remain after a business transaction is concluded, whereas the settlor of a traditional trust may or may not retain an interest; and
9. Business trusts feature centralized management, perpetual existence, and state registration requirements.

S.I. Strong, *Congress and Commercial Trusts: Dealing with Diversity Jurisdiction Post-Americold*, 69 Fla. L. Rev. 1021, 1037–40 (2017) ("Strong Article"). These are helpful benchmarks which assist the Court in conducting a holistic evaluation of the issue before the Court. None of these factors are in and of themselves dispositive. Rather, they orient the Court in getting at the answer to the underlying question of "what is the NHV Trust's purpose?"

Accordingly, the Court will apply *GBForefront*'s "business trust" test according to the rubric set out in that Opinion, but will also look to *Dille Family Trust* and the Strong Article as helpful guides. In light of these principles, the NHV Trust has the following notable provisions:

1. The trust was formed by a group of "investors" who contributed capital to the trust with an expectation of receiving a return on their investments as a *pro rata* share of the "avails and proceeds of the Trust Property." (NHV Trust, ECF No. 46-8, at 12, 16–17, 22, 52–54 (exhibiting the list of "investors" in the trust, who are also the "owners" of the Trust Property, the "settlors," and the "beneficiaries" under the terms of the NHV Trust, as well as how much each person or entity invested).)
2. Whereas settlors of a traditional trust are seldom the sole beneficiaries, the settlors here are the only beneficiaries. (*Id.* at 12 ("The Settlors are also the beneficiaries of this Trust").)
3. The trust *res* consists of property that was originally contributed by the beneficiaries themselves, because the beneficiaries are also the settlors who were the "record fee owners" of the Trust Property." (*Id.*)
4. The trust creates continuity of the enterprise uninterrupted by the death of any beneficiary (*Id.* at 18 ("The death, incompetency, insolvency or bankruptcy of any one or more of the Beneficiaries . . . *shall not terminate the Trust*" or affect any of the powers of the Trustee.).)
5. The beneficiaries' right to proceeds under the trust is "personal property" that can be assigned or transferred at any time subject to certain conditions. (*Id.* at 18.) In order to sell, assign, or transfer their beneficial rights, a beneficiary must submit a proposal to the trustee, who can reject or accept that proposal. (*Id.* at 18–19.) However, even if the trustee rejects the proposal, the beneficiary may still complete the transfer to a transferee with the caveat that the transferee takes the beneficial rights subject to the provisions of the Trust Agreement. (*Id.* at 19.)
6. The beneficiaries appear to have some power to control the trustee and amend the terms of the trust by (a) approving the transfer, sale, and mortgage of the trust property; (b) likewise preventing the transfer of the trust property if less than two thirds of the beneficiaries approve of the transfer; and (c) amend any provision of the trust with the consent of all the beneficiaries and the trustee. (*Id.* at 17, 30, 40–41.)

These terms and provisions of the NHV Trust convincingly demonstrate that the trust is intended for a bargained-for exchange rather than donative transfer purposes. The trust effectuates financial returns to the "investors" (a.k.a., the settlors and beneficiaries) in a *pro rata* amount that is consistent with each initial investors' investment. Further, the other indicia discussed above demonstrate that the NHV Trust has elements that are far more consistent with a distinct legal entity created for business purposes, rather than "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the

property for the benefit of another person." Restatement (Second) of Trusts § 2 (1959). Further, the beneficiaries have certain powers to amend the terms, control the trustee, and alienate their beneficial interests that are incongruous with the customary terms of a traditional trust.

These apparent purposes of the NHV Trust strongly militate against considering it a traditional trust under the test set forth by the Third Circuit in *GBForefront*. Notwithstanding the state law matters discussed above, it is evident that the NHV Trust is a "distinct legal entity" set up "for the purpose of transacting business for a profit." *GBForefront*, 888 F.3d at 40; *Dille Family Tr.*, 598 B.R. at 194.

The Defendants argue that another consideration in this inquiry is the Plaintiff's tax returns. As the court noted in *GBForefront*, there has long been a legal distinction in tax law between a traditional and business trust. 888 F.3d at 39 n.12 (citing Restatement (Second) of Trusts § 1 cmt. b (1959); *Morrissey v. Comm'r*, 296 U.S. 344, 357 (1935)). In their supplemental brief, the Defendants point out that the NHV Trust filed federal and state partnership income tax returns in 2018 and 2019, which it says is undisputed evidence that NHV Trust is a business trust. (ECF No. 77, at 3–4.) This is reinforced, they say, by the fact that the trust never filed traditional trust income tax returns. (*Id.*)

The Plaintiff responds that tax returns carry "little to no weight" in the trust analysis. (ECF No 78, at 1.) It notes that while the Third Circuit in *GBForefront* highlighted the tax law distinction between traditional and business trusts, the court did not appear to rely on that factor in distinguishing between the two types of trusts. (*Id.* at 2.) The Plaintiff also notes that there are significant differences between the tests for business trusts under the Internal Revenue Code and *GBForefront*, given that the former is concerned with the trust's economic activities and the latter, they argue, with who is making the litigation decisions for the trust. (*Id.* at 3.)

13

While *GBForefront* did highlight the tax law distinction between traditional and business trusts in dicta, such does not appear central to its holding. The Opinion instructs courts to generally inquire into state law and the purposes of the trust to ascertain whether there is a bargained-for exchange or a donative transfer. Still, the manner in which NHV Trust determined to file its obligatory federal tax filings is a degree of validation of the conclusions that the Court reaches as to the purposes of the trust, and is certainly consistent with them.

## IV. CONCLUSION

For the preceding reasons, the Defendant's Motion to Dismiss will be granted on the grounds that the Court does not have subject matter jurisdiction to hear this case. The Court concludes NHV Trust is a business trust and its citizenship must be determined by that of all of its members. Thus, because the NHV Trust's members include a stateless party, Plaintiff NHV cannot sue or be sued in federal court under the principles outlined in *Swiger v. Allegheny Energy, Inc.*, 540 F.3d at 184. Accordingly, this action will be dismissed without prejudice for want of subject matter jurisdiction.

An appropriate Order will enter.

_____
Mark R. Hornak
Chief United States District Judge

Dated: August 17, 2020
Cc:     All counsel of record